UNITED STATES of America,
Plaintiff,

v.

Clarence E. WATSON, Jr., Defendant.

Crim. No. 1162–53.

United States District Court
District of Columbia.

Dec. 3, 1956.

Albert J. Ahern, Jr., Washington, D. C., for the motion.

Oliver Casch, U. S. Atty., and Frederick G. Smithson, Asst. U. S. Atty., District of Columbia, opposed.

HOLTZOFF, District Judge.

On the eve of the third trial of this case in which the defendant is charged with murder in the first degree, the defendant has made a motion to suppress certain evidence, consisting of a pair of trousers and a shirt belonging to the defendant and obtained by the police from him.

The first trial concluded with a disagreement of the jury. The second trial resulted in a conviction of murder in the first degree. The conviction was reversed on the ground that a written confession received in evidence should not have been admitted at the trial, 98 U.S.App.D.C. 221, 234 F.2d 42. The Court of Appeals reached the conclusion that the police made an error in calculating the time at which the defendant should have been brought before a committing magistrate and that the confession was obtained after the time at which the Court of Appeals held the defendant should have been arraigned.

A preliminary question arises whether by not making this motion prior to the first or even the second trial, the defendant has waived his right to do so at this time. No doubt the reason why the motion is now made for the first time is that there has been a change of counsel. The Court has appointed new counsel to represent the defendant at the third trial whose resourcefulness has developed this point. The Court is of the opinion that after a conviction is reversed, all of the rights that the defendant originally held are reinstated and that consequently the fact that this motion was not made prior to the first or even prior to the second trial does not bar him from presenting it at this time. Consequently, the Court will entertain and pass upon the merits of the motion.

A thoughtful and reflective observer of our criminal procedure might indeed wonder why so much time and energy is devoted to purely tangential matters, that have no bearing upon the question that is really in issue, namely, the guilt or innocence of the defendant. A person not immersed in the day-to-day details of the administration of justice and being, so to speak, able to see the forest without his vision being obscured by the trees might well ask himself that question. Nevertheless, in view of the state of the authorities in this Circuit, it is a proper function of counsel to interpose objections of the kind that are presented by this motion and it is the duty of the Court to consider them seriously and fully.

A brief summary of some of the factual background is necessary to an understanding of the points to be determined. The defendant was arrested about 6:40 P. M. on July 17, 1953, at his home and was taken to Police Headquarters. He was intermittently questioned during the evening and during the night and, finally, between 3 and 4 o'clock in the morning, he made an oral confession, which he repeated again shortly after 8 o'clock in the morning. Later in the morning, he was taken to the premises where the murder involved in this case took place, a building known as Scott's Hotel, and he did what is called in common parlance "reenact the crime", namely, he pointed out visually the various steps that he took and the various places that he passed through.

During his confessions, he stated that he escaped from the premises by going over the fence and, while doing so, he tore his trousers. He was asked where those trousers were and stated that they were in his room. In answer to further questions, he stated that he was willing

to take the police officers to his room and turn over the trousers and a shirt that he wore on that occasion to them.

The defendant was then taken to the premises occupied by him. These premises consisted of a room in an apartment. The police and the defendant were admitted to the apartment by the landlady. They went to his room. One of the police officers asked the defendant to get and turn over to him the trousers and the shirt, which the defendant did. All this happened after 10 o'clock in the morning, and the defendant was then returned to police headquarters and made a written confession. His arraignment before a magistrate did not take place until after that was done.

So far, there is no essential dispute between the police and the defendant as to what occurred. The defendant, however, testified on this motion that the reason why he turned over the trousers and the shirt to the police was that he was afraid that if he did not do so he might have been beaten. There was no claim that he was threatened in any way. This fear, if it did exist, evolved out of the defendant's own consciousness. We have only his own statement to that effect since there is no surrounding circumstance indicating that there was reason for his fear.

It is claimed by defense counsel that the manner in which the trousers and the shirt were obtained constituted a violation of the Fourth Amendment and was an unlawful search and seizure. This is the principal objection, the validity of which the Court must determine.

■■■ It must be observed from the foregoing narrative of the pertinent facts that there was no search in this case. The Fourth Amendment applies to searches and seizures. The history of the Fourth Amendment clearly shows that the Founding Fathers were aiming at the evil consisting of oppressive exploratory domiciliary searches, which had been carried on both in England and in the colonies prior to the American Revolution. The Fourth Amendment, however, has not been limited to that situation by the courts. On the basis of the authorities, this Court is of the opinion that the phrase in the Fourth Amendment "searches and seizures" must be construed both in the conjunctive and in the disjunctive, namely, the Fourth Amendment applies to a search not followed by a seizure, to a search followed by a seizure, and to a seizure not preceded by a search. The seizure involved in this case was of a kind that required a search warrant, since it was not incidental to an arrest and was not made in the premises and at the time when the arrest was made. The Government recognizes this situation and contends that the necessity of a search warrant was waived by the defendant by his consenting to the seizure.

■■■ The Court is of the opinion, on the foregoing facts, that there was a valid consent to the seizure and that this consent waived the right of the defendant to have no seizure made without a search warrant. The question is one of fact. Authorities on the point are not necessarily helpful and certainly are not determinative. Nevertheless, some assistance may be gathered from the cases on which the defendant relies.

The two principal cases cited by the defendant are Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649, and Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819. In each of these cases the search and seizure involved was held to be without the defendant's consent on the theory that the alleged consent had been obtained involuntarily. Each of these two cases, however, involved an entirely different situation from that presented in the case at bar.

In both the Judd and the Higgins cases, the alleged consent was to a general search of the defendant's premises. The presence of contraband articles in the premises was unknown and the search was of an exploratory nature. The Court of Appeals held that, under the specific facts surrounding the giving of the consent in each of these two cases, the con-

sent could not be deemed voluntary although in the Judd case one of the judges dissented.

By contrast, in the case at bar, the defendant made a confession and informed the police that two articles that might be of importance were in his possession in his room. There is much greater probability that such a consent would be given voluntarily than the consents of the type involved in the Judd and Higgins cases. This is made very clear in Judge Edgerton's opinion in the Higgins case [93 U.S.App.D.C. 340, 209 F.2d 820] in which he stated, "Words or acts that would show consent in some circumstances do not show it in others. * * * If a valid confession precedes a search by police, permission may show true consent to the search."

Gibson v. United States, 80 U.S.App. D.C. 81, 149 F.2d 831, also cited by the defendant is not in point. There the police, in possession of a warrant of arrest, entered the wrong apartment and were admitted by its occupants. The Court held that, under such circumstances, failure to protest against the search or mere acquiescence in it did not constitute an affirmative voluntary consent. Cradle v. United States, 85 U.S.App.D.C. 315, 178 F.2d 962 is likewise not in point because the seizure involved in that case was upheld.

■ The defendant raises one other point that requires brief notice. The defendant claims that, since the seizure took place and perhaps information concerning the existence of the articles was obtained after the time when the defendant should have been brought before a committing magistrate, the Government is not at liberty to make use of the evidence. This Court is of the opinion that the so-called McNab doctrine may not be carried that far.

As a matter of fact, Rule 5 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which governs the arraignment of a prisoner before a committing magistrate, imposes no penalty for failure to bring the prisoner before a committing magistrate "without unnecessary delay". An examination of the history of the Federal Rules of Criminal Procedure will show that a proposal was made but rejected by the Advisory Committee that any confession obtained during a period of undue delay should be inadmissible. The reason why it was rejected is obvious, because otherwise the penalty for the miscalculation or mistake of the officer would be imposed on the public and not on the officer.

■ The opinion of the Court of Appeals in this case holds, however, that the written confession must be excluded. This is the law of the case and is binding on this Court at this trial. To be sure, this Court is of the opinion that the Court of Appeals *sub silentio* overruled the Watson case in Rettig v. United States, D.C.Cir., 239 F.2d 916. The Rettig case is particularly important because the opinion was rendered by the entire Court en banc. Five of the nine circuit judges held that failure to bring a defendant before a committing magistrate in due time, standing alone, in and of itself, is not sufficient to warrant the exclusion of a confession made within the period of undue delay.

This Court is of the opinion, however, that since the opinion of the Court of Appeals in this case is the law of this case, it must govern the trial and the subsequent decision in the Rettig case cannot apply to it. The Court knows of no authority, however, to the effect that any information or any articles obtained during the period of undue delay in arraignment must be excluded. Nueslein v. District of Columbia, 73 App.D.C. 85, 115 F.2d 690, cited by the defendant, does not sustain the defendant's position on this point. In that case, the information obtained by the police was secured after an unlawful entry into premises in violation of the Fourth Amendment. In other words, it was secured in violation of a constitutional right of the defendant.

■■ The right to an arraignment before a committing magistrate without

**262**

undue delay is not, however, a constitutional right. There is no right under the due process clause of the Constitution to a preliminary hearing before a magistrate. That right is purely statutory. I say "statutory" because the Federal Rules of Criminal Procedure have the force and effect of statutes and are more than merely rules of court. The mere fact that the police have made a mistake or a miscalculation in determining when the defendant should be arraigned should not visit upon the public the consequence of excluding from evidence objects obtained during that period if, as the Court is holding here, they were obtained legally and not in violation of the Fourth Amendment.

The Court must observe that the primary purpose of a trial of a criminal case is to determine whether the defendant has or has not committed the offense with which he is charged. If an affirmative determination is made it must, of course, be based on proof beyond a reasonable doubt. Moreover, this determination must be reached in accordance with civilized standards and applicable rules of law. Nevertheless, the guilt or innocence of the defendant is the issue to be determined and everything else is secondary.

█ The object of the criminal law is to protect the public against depredations of a criminal. On the other hand, its purpose is also to prevent the conviction of the innocent, or the conviction of a person whose guilt is not established beyond a reasonable doubt. The Court must balance all these aims of the trial. This view was eloquently stated by Mr. Justice Cardozo in Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674:

"* * * justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true."

A similar view was expressed by Chief Justice Vanderbilt in State v. Tune, 13 N.J. 203, 217, 98 A.2d 881, 888. His comments are important not only because New Jersey has, in effect, adopted the Federal Rules of Criminal Procedure but also because Chief Justice Vanderbilt was the Chairman of the Advisory Committee appointed by the Supreme Court to draft the Federal Rules of Criminal Procedure. He says:

"* * * although we are ever alert to protect the rights of the individual accused, we should remember that the people of this State must also be protected. In weighing the rights of the individual and those of the State, we must not be carried away in our desire to protect the individual accused to such an extent that the safety of the public is jeopardized."

In view of the considerations that have been reviewed, the motion to suppress is denied.