**UNITED STATES of America**

v.

**Alan Ronnie AKERS, Appellant.**

**No. 82–1425.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 29, 1982.

Decided March 15, 1983.

As Amended March 15, 1983.

Mikva, Circuit Judge, concurred in result and filed opinion.

·W. Edward Thompson, Washington, D.C., for appellant.

Wendy Bebie, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell, John R. Fisher and Deborah Robinson, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee. John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, also entered an appearance for appellee.

Before MacKINNON, MIKVA and SCA-LIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

Statement filed by Circuit Judge MIKVA concurring in the judgment.

MacKINNON, Circuit Judge:

Alan Ronnie Akers and John Henry Doughty were indicted for unlawful possession of a controlled substance (phenmetra-zine) with intent to distribute, 21 U.S.C. § 841(a), and with possession of a dangerous drug (phenmetrazine), D.C.Code 33–702. When the jury was unable to reach a verdict, a mistrial was declared and a new trial ordered. Thereafter Doughty became a fugitive and Akers was the sole defendant in the second trial. The jury found Akers guilty on the federal count charging unlawful possession with intent to distribute.[1] He was sentenced to twelve to forty-eight months of imprisonment with a special parole term of two years.

The sole issue on appeal concerns the court's refusal to admit five photographs, offered by the defense, which depicted the environs of the crime.

At trial, the government's case was based primarily upon the testimony of two detectives from the Drug Enforcement Unit of the Metropolitan Police Department who observed the defendant as he engaged in drug transactions. These officers were stationed with binoculars on the second floor of a vacant house at 941 French Street, N.W., for the purpose of conducting narcotics-related surveillance. The officers used the second floor back room of the house which had two windows, one overlooking the alley in the back to the north and another which faced onto 10th Street, N.W. on the west. Observations were also conducted from a window in the second floor bathroom which also provided a westerly view of 10th Street, N.W. The principal testimony of the officers concerned the drug related activities which they observed in the alley behind the house. They also observed events on 10th Street at the end of the block.[2]

The officers testified that Akers' van was parked in the alley immediately behind the vacant house at 941 French Street, that they had an "unobstructed" view of Akers' and Doughty's actions in the alley (Detective Robinson, Tr. at 70–71 and 72; Detec-

---

1. The jury did not return a verdict on the count charging simple possession in violation of D.C. Code § 33–702.

2. The house at 941 French Street, N.W., was the last *house* on the block before 10th Street, N.W. A small park occupied the area between the house and the cross-street at the end of the block.

tive Thomas, Tr. at 121–22 and 126),[3] and that they observed a transaction in which Doughty, the absent co-defendant, conversed with an individual in a car on the street who handed Doughty some money. Doughty then walked into the alley, handed the money to the defendant, and the defendant counted out pink pills to Doughty from a paper bag which he was holding. Doughty returned to the parked car, gave the driver the pills, and the car drove away.

The officers testified that, shortly thereafter, they observed a similar transaction. Doughty walked up to the van and handed the defendant some money, and the defendant counted pills to Doughty from the paper bag. As he was counting the pills to Doughty, Akers dropped some on the ground. Officer Robinson testified that he clearly saw these "pink pills" on the ground and that Doughty picked them up. (Tr. at 54–55). After this second transaction, Doughty put the pills he received from the defendant into a different paper bag, walked to a nearby parked car and drove away. The officers radioed police in a patrol car, Doughty's car was stopped within several blocks, and Doughty was placed under arrest. A search of the car subsequent to arrest produced a paper bag containing fifty pink pills. This information was radioed to the officers at the vacant house who then proceeded to arrest defendant Akers.

When he was arrested, Akers was seated in the van in the alley. A contemporaneous search of the van produced a yellow napkin covering approximately nine pink pills, a paper bag with approximately twenty-five pills, and a black camera case with approximately five hundred and fifty-two pills.

At trial, Akers contended that he had no knowledge that the pills were in his van. He testified that the van had been borrowed that morning by a cousin, and that

the pills must have been left in the van by the individuals who borrowed it. Additionally, Akers disputed the officers' version of the transactions. He denied that such transactions ever occurred and further asserted that the officers could not have seen what they described because their view was obstructed by trees.[4] That the police saw Akers handling the pills belied his disclaimer, and the jury did not believe his testimony.

To support his contention that the officers' view was obstructed, Akers proffered five photographs of the area in and around 941 French Street, N.W. The government objected to their admission on the ground that they did not reflect the view which the officers had from the second story windows of the French Street residence. After extensive and detailed testimony and discussion with counsel (Tr. 309–21), the court refused to admit the five photographs.[5] (Tr. 334–35)

Following the guilty verdict, the defendant moved for a new trial, asserting that the exclusion of the five photographs denied him a fair trial. The court denied the motion. Akers appeals the denial of a new trial, contending that the photographs were wrongfully excluded. This contention basically involves two principal points: (1) Did the admission of the five photographs at the first trial require their admission at the second trial? (2) Were the pictures admissible as a fair representation of the view which the officers had from the second story of the vacant building? In other words, were the photographs relevant and probative.

■ (1) Appellant suggests that the admission of the photographs in the first trial supports his justifiable reliance that

---

**3.** All references to testimony in the record are to pages in the transcript of the *second trial,* January 8–11, 1982.

**4.** The police officers' observations of the second Akers-Doughty transaction were basically confirmed when Doughty was arrested several blocks away from 941 French Street, and the search of his car produced pills of the

type the officers had observed being handed to Doughty by Akers. [Tr. at 57].

**5.** Three other photographs offered by the defense were admitted. These photographs depicted, from ground level, the alley and the appellant's van.

they would be admitted in the second trial.[6] Such suggestion is baseless. No doctrine of the law of the case operates under *these circumstances*.[7] The evidentiary ruling at issue was rendered in a *new trial* which was ordered pursuant to a mistrial.[8] When, as here, "the previous trial [is] a nullity," the court in the new trial tries "the case as if it were being tried for the first time . . . , as if there had been no prior trial." *Hobbs v. State*, 231 Md. 533, 536, 191 A.2d 238, 239, *cert. denied*, 375 U.S. 914, 84 S.Ct. 212, 11 L.Ed.2d 153 (1963). *See also United States v. Paroutian*, 319 F.2d 661, 663 (2d Cir.1963), *cert. denied*, 375 U.S. 981, 84 S.Ct. 494, 11 L.Ed.2d 426 (1964) (at new trial prosecution is not precluded from introducing additional proof that evidence excluded at first trial had an independent source); *United States v. Watson*, 146 F.Supp. 258, 259 (D.D.C. 1956) (fact that defendant did not move to suppress certain evidence prior to first two trials does not preclude him from making the motion prior to third trial); *State v. Osburn*, 216 Kan. 638, 533 P.2d 1229, 1233 (Kan.1975) (granting new trial places defendant in same position as if no trial had been had); *State v. Darwin*, 161 Conn. 413, 288 A.2d 422, 425–26 (Conn.1971) (The fail-

ure, at the first trial, to contend that the search warrant was invalid does not preclude defendant from raising the issue at new trial. "The trial is 'new' in every sense. It is as if no trial had ever taken place. . . . [E]vidence which was not objected to at the first trial may be contested at the second."). Thus, the fact that the photographs were admitted in first trial does not compel their admission in the new trial. Any reliance the defendant's attorney placed upon the earlier ruling in planning for the new trial was therefore unjustified. The mere fact that the same judge happened to be sitting did not entitle counsel to assume that the judge would rule the same way [9]—especially since the judge's exercise of his broad discretion on an evidentiary ruling (which ultimately pertains to relevancy) must turn upon the evidence as developed in the particular trial. *See United States v. Allison*, 474 F.2d 286, 289 (5th Cir.1973) ("The relevancy or irrelevancy of particular evidence, therefore, turns on the facts of the individual case.").

■■■ (2) We also find here that, unlike what occurred in *Miller v. Poretsky*, 595

---

**6.** The practice which appellant suggests would *compel* a trial court to render the same rulings upon a new trial. If at the first trial the court's ruling had been erroneous, under appellant's theory, the trial court would be bound to perpetrate the same error at the new trial.

**7.** For a discussion of the operation of the doctrine of the law of the case, see 12 Minn.L.Rev. 403 (1928); 5B C.J.S. *Appeal & Error* §§ 1821–34 (1958); 24A C.J.S. *Criminal Law* § 1840 (1958).

**8.** The effect of admissibility decisions made in the first trial upon such rulings in a new trial was addressed, in a slightly different factual context, in *United States v. Dovico*, 261 F.Supp. 862 (S.D.N.Y.1966). At the new trial, the *Dovico* trial court specifically found that it was *not* bound, by a decision rendered in the *first trial*, on the issue of the admissibility of certain evidence. Although there was some question as to whether the decision in the first trial was intended to "finally determine admissibility on the new trial," the court found that even if we read [the trial judge's] persuasive disposition as setting a rule to be followed at the retrial, *we cannot conclude that it determines admissibility of evidence, such ques-

tion resting in the discretion of the trial judge.*

*Id.* at 869 (emphasis added).

On appeal, the Second Circuit endorsed the trial court's ruling. The appellate court reasoned that regardless of the first trial judge's view that the evidence would be admissible at the new trial, the actual admissibility determination was within the discretion of the trial judge at the new trial. The appellate court upheld the trial court's exclusion of the evidence at the new trial. *United States v. Dovico*, 380 F.2d 325 (2d Cir.), *cert. denied*, 389 U.S. 944, 88 S.Ct. 308, 19 L.Ed.2d 302 (1967).

**9.** *Miller v. Poretsky*, 595 F.2d 780 (D.C.Cir. 1978), involved an analogous situation. There the judge stated in pretrial that the evidence *would be admitted* in the very trial at hand. Even then, we said that the judge "is not absolutely bound by his representations at the pretrial conference." *Id.* at 784. Proceeding to an independent evaluation of the ruling on admissibility, we concluded that the plaintiff's evidence was relevant and should have been admitted. However, we held that the court's error was not sufficiently prejudicial to require reversal. *Id.* at 784–85, 788.

F.2d 780 (D.C.Cir.1978), the trial judge properly evaluated the admissibility of the photographs at the second trial on the basis of the actual testimony at that time. Photographic evidence is admissible only if it is relevant to the specific issues at trial. *Richardson v. Gregory,* 281 F.2d 626, 630 (D.C.Cir.1960). The determination of relevance can only be made with reference to the specific testimony adduced at trial. In this instance, after carefully reviewing the photographs and the testimony, the trial court determined that the photographs were inadmissible because they were not relevant. Rulings as to the admissibility of photographs are clearly within the discretion of the trial judge and will only be overturned upon a showing of abuse of discretion. *Jackson v. United States,* 395 F.2d 615 (D.C.Cir.1968). The decision to exclude these five photographs was correct and was not an abuse of discretion.

*None* of the photographs depicted the view the officers had from the *second story window at the rear of the building* from which they observed the principal transactions and articles (pills) which prove Akers' guilt. Nonetheless, the photographs were offered to support the claim that the police officers were unable to see the occurrences, to which they testified because their view of the alley and the street allegedly was blocked by trees.[10] (Tr. at 310). As the trial court correctly ruled, the excluded photographs (1) were not relevant to the facts at issue [Fed.Rules Evid. 402], or (2) to the extent they might have some relevance, were not sufficiently accurate or demonstrative to avoid misleading the jury [Fed. Rules Evid. 403]. A close examination of the photographs themselves and a complete review of the trial transcript fully supports the district court's decision to exclude the five photographs.[11]

10. There was considerable discussion at trial as to the height of the trees in the park. The resolution of this factual dispute is irrelevant to the question whether the officers could see *Akers,* who at all times was in the *alley,* because the park was not between the house and the alley. The issue of the height of the trees in the park is only relevant to the officers' testimony describing the transaction which they observed between Doughty and the unidentified individual in the car parked on 10th Street, N.W.

Defense counsel contended that the officers were never in the house, but were parked on the street and, therefore, could not have seen the activities in the alley. The factual issue of the height of the trees in the park was also raised to impeach the officers' testimony generally. However, as discussed *infra,* the photographs do *not* aid in accurately establishing the height of the trees in the park.

11. Exhibit (1) purports to depict photographically the general area, including the house in which the officers were stationed. [Tr. at 284]. This photograph is not relevant as it depicts the playground and does not depict 941 French Street. [Tr. at 314–16]. During a colloquy with the court, defense counsel suggested that the photograph was relevant to the factual dispute regarding the height of the trees in the park. (*See* note 10 *supra* ). However, the distortions due to perspective destroy any probative value as to the height of the trees. The court observed that the width of the tree trunks indicated young trees which might not exceed 15 feet in height [Tr. at 316–17]; and that in addition to the fact that the perspective of the

picture could make it misleading, there was no foundation testimony to establish that the photograph actually depicted the trees in the park. [Tr. at 284].

Exhibit (2) purports to depict the house at 941 French Street and the adjoining playground. [Tr. at 282]. This photograph was offered to prove that the officers' view from the rear window was obstructed by a tree. That point cannot be established by this photograph, however, because the angle from which the picture was taken makes it impossible to determine the exact location of any trees vis à vis the French Street residence [Tr. 311–13], or the location of the drug transaction to which the officers testified. The trial court also correctly noted that the foundation for admission of the photograph was inadequate. [Tr. at 312–13].

Exhibit (3) purports to depict a part of the alley. The individual in the photograph is allegedly standing where the van was parked, and is facing the rear of 941 French Street. But the photograph does not precisely show his location within the limits of that lot or with respect to the rear window on the second floor of the building. The photograph does not show any portion of the building at 941 French Street or any object that would support Akers' claim that the view of the police from the second story was obstructed. It is therefore not relevant on the point for which it was offered. The testimony regarding this exhibit is unspecific and does not provide the proper foundation for its admission. [Tr. at 283]. Although the scene in the photograph was further identified by defense counsel during a bench conference,

The transcript reveals that the court fully discussed each photograph with counsel and afforded counsel an opportunity to establish relevance and accuracy. Counsel was unable to demonstrate to the court that the photographs were relevant and not misleading. None were taken from a position which would produce reliable evidence as to the view the officers had from the second floor rear window. The photographs were thus not probative on the issue for which they were offered and the court's exclusion of these photographs was a proper exercise of its discretion.

The judgment of conviction of the district court is therefore affirmed.

*Judgment accordingly.*

MIKVA, Circuit Judge, concurring in the result:

I agree with the majority that the appellant's conviction should be affirmed because the trial court did not abuse its discretion when it excluded the photographs as either irrelevant or misleading, *see* FED.R.EVID. 402–403. I concur only in the result, however, because I am troubled by the way in which the majority characterizes the "law of the case" doctrine. *See generally Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power"). Although such a flexible doctrine does not require that a trial court render the same evidentiary rulings upon a new trial that it issued during the first trial, it does suggest that a decision to exclude evidence previously admitted should be explained fully by the trial judge and subjected to more rigorous scrutiny on appellate review. *Cf. Miller v. Poretsky,* 595 F.2d 780, 784 (D.C.Cir.1978) ("representations made [at pretrial conference] should only be reneged upon with

great reluctance, usually only to prevent manifest injustice"). Applying such heightened scrutiny to the particular facts of this case, however, does not require reversal of the district court.

the court correctly noted the lack of foundation testimony regarding this photograph. [Tr. at 318–19].

Exhibit (4) purports to depict the general area and 941 French Street. [Tr. at 285]. The photograph is not relevant because it does not provide a view of the house or the area that is

probative on the issue for which it was offered and it is not relevant to the testimony of any witness.

Exhibit (5) purports to depict a view of the southeast end of the alley at 10th and S Streets. [Tr. at 285]. The photograph is not relevant because it does not depict 941 French Street.