**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3022
_____

UNITED STATES OF AMERICA

v.

ARTHUR ROWLAND, a/k/a "BO",
                                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cr-00579-002)
District Judge: Honorable Gerald J. Pappert
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 4, 2024

Before: JORDAN, HARDIMAN, and PORTER, *Circuit Judges*.

(Filed: September 6, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

A jury convicted Arthur Rowland on five counts related to his participation in a drug-trafficking conspiracy. Rowland now appeals his judgment of conviction, claiming the District Court made evidentiary and procedural errors. We will affirm.

I

A

In 2018, a federal investigation revealed that Rowland was distributing hundreds of pounds of methamphetamine in the Philadelphia area in connection with the Curshawn Banks drug-trafficking organization. Based on this investigation, federal agents arrested Rowland at his apartment. Pursuant to a search warrant, the agents searched the apartment on December 14, 2018 and recovered: (1) two packages of methamphetamine hidden in a drawer below the oven; (2) almost $17,000 in cash, the majority of it stuffed inside a couch in the living room; and (3) assault rifle ammunition lying on the floor in plain sight. Later that day, agents also found two assault rifles stored in a secret compartment of a piece of furniture that had recently been removed from Rowland's apartment.

Rowland was indicted in October 2019 for conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(D) and 846 (Count One); attempted possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846 (Counts Two and Three); possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count Four);

2

possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Five); and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Six).

B

Before the February 2022 trial, Rowland moved to admit evidence that Banks, a co-conspirator and witness for the Government, had previously been terminated as a government informant because federal agents were concerned he was "not [being] fully forthcoming." App. 74. Rowland argued that this evidence not only showed that Banks had a propensity for dishonesty, but established an incentive for Banks to "make up certain things to satisfy the Government" that he was not withholding information the way he had before. App. 74.

Citing Rule 104(b) of the Federal Rules of Evidence, the District Court denied Rowland's motion, concluding that "no reasonable jury could find that the termination affected the truthfulness of his testimony in this case" because "there [wa]s nothing to show that Banks knew that his prior agreement was closed because he provided incomplete testimony."[1] App. 100–01. The Court also held that the evidence was needlessly cumulative under Rule 403 "given [its] limited probative value" and "the plethora of other impeachment evidence available." App. 101. While the District Court permitted Rowland to "impeach Banks' character for truthfulness . . . by asking whether

---

[1] The Government had produced a document from Banks's confidential informant file indicating that he did not know why he was terminated. Rowland agrees that "the record does not disclose that Banks was informed of why he was terminated as a cooperator." Rowland Br. 42.

he ha[d] ever been less than forthcoming when acting as a confidential informant," it noted that Rule 608(b) would preclude the introduction of extrinsic evidence if Banks denied such conduct. *Id.*

Also before trial, Rowland moved to refile and relitigate suppression motions he had previously withdrawn more than two years earlier. The District Court denied the motion, holding that Rowland had waived these suppression motions.

Trial commenced in February 2022. Rowland sought to cross-examine a federal agent about the arrest of David Dixon for drug trafficking more than three years after Rowland himself was arrested. Rowland's goal was to support "an alternative theory of whose drugs . . . could be in [Rowland's] apartment," App. 164, since Dixon appeared on Rowland's lease as an authorized occupant. The Government objected—and the District Court agreed—that the proposed cross-examination was inadmissible as both improper propensity evidence and irrelevant. The jury convicted Rowland of Count Six (possession of a firearm by a felon), but it was unable to reach a verdict on the remaining counts, so the District Court declared a mistrial as to those counts.

## C

Rowland's second trial was scheduled to begin on April 21, 2022. On March 4, 2022, after learning that Philadelphia police had taken DNA swabs of the assault rifles removed from Rowland's apartment, the Government executed a warrant to obtain a DNA sample from Rowland. Ten days before trial, the Government disclosed to Rowland a Philadelphia Police Department report stating that one of the DNA samples from one of the assault rifles matched Rowland's DNA profile. Within the next several days, the

4

Government also provided curricula vitae for the report's two signatories and transcripts of their prior federal court testimony. The Government did not provide the entire, approximately 300-page laboratory file underlying this DNA report, until the day it presented the DNA evidence.

On the day trial began, Rowland moved to suppress the Government's DNA evidence. Rowland insisted that the only appropriate remedy was suppression, but he admitted he had made no effort to retain an expert to testify about the DNA report, claiming that the process of obtaining an expert and preparing for cross-examination would have taken longer than a week. The District Court denied Rowland's motion, concluding that the Government had not violated Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure because Rowland was on notice of the DNA issue by early March. The Court also reasoned that Rowland had failed to show how he would be prejudiced if the DNA evidence were not excluded.

The jury found Rowland guilty on Counts One through Four and acquitted him on Count Five (possession of a firearm in furtherance of drug trafficking). The District Court sentenced Rowland to 480 months' imprisonment followed by 5 years' supervised release. Rowland timely appealed.[2]

## II

Rowland first argues that the District Court improperly restricted him from

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

5

eliciting evidence that Dixon, an "alternative suspect," later engaged in similar criminal conduct in the same apartment complex where Rowland was arrested. Rowland Br. 7. But Rowland failed to preserve this argument for appeal.

"For mid-trial evidentiary rulings, a new trial will result in different factual and evidentiary circumstances occasioning a new exercise of [a] district court's discretion." *United States v. Hoffecker*, 530 F.3d 137, 164–65 (3d Cir. 2008) (cleaned up). "A retrial following a mistrial is both in purpose and effect a new trial. Accordingly, objections made at the aborted trial have no bearing on the retrial, as the two are entirely separate affairs." *United States v. Palmer*, 122 F.3d 215, 221 (5th Cir. 1997).[3] While the jury in Rowland's first trial did convict him on Count Six (possession of a firearm by a felon), Rowland has never argued that Dixon's arrest for drug trafficking is pertinent to this charge. Because the counts for which that evidence is relevant ended in a mistrial, Rowland had to present the evidence of Dixon's similar criminal conduct at his second trial to preserve the argument for appeal. He concedes he did not do so. *See* Reply Br. 4.

Rowland points out that we "do[] not require parties to relitigate previously decided issues before the district court where doing so 'would be an exercise in wasteful formality.'" *United States v. Reyes-Romero*, 959 F.3d 80, 95 (3d Cir. 2020) (quoting *Hoffecker*, 530 F.3d at 165). That is true, but "[t]he mere fact that the same judge

---

[3] *See also United States v. Gomez*, 67 F.3d 1515, 1526 n.13 (10th Cir. 1995) ("[I]t is fundamental that, in cases where a new trial has been ordered, objections made during the first proceeding do not preserve issues for appeal in the second."); *United States v. Akers*, 702 F.2d 1145, 1148 (D.C. Cir. 1983) ("[T]he judge's exercise of his broad discretion on an evidentiary ruling . . . must turn upon the evidence as developed in the particular trial.").

happened to be sitting [for Rowland's second trial] did not entitle [Rowland] to assume that the judge would rule the same way." *United States v. Akers*, 702 F.2d 1145, 1148 (D.C. Cir. 1983). After all, a retrial may proceed in an entirely different manner than the mistrial that preceded it. *See United States v. Cunningham*, 679 F.3d 355, 377 (6th Cir. 2012) ("[A] retrial of a case is exactly what it says; it is a re*trial*, not a replay."). And Rowland identifies no cases involving mid-trial evidentiary challenges in which we have employed the "wasteful formality" standard. *See* Reply Br. 3 (citing *Reyes-Romero*, 959 F.3d at 95 (arguments related to prosecutorial misconduct); *United States v. Fattah*, 858 F.3d 801, 808 (3d Cir. 2017), *as amended* (June 12, 2017) (constitutional claims)).

Rowland also argues he was not required to proffer the Dixon evidence during the second trial because the District Court stated during the February 2022 trial that it saw no basis to revisit its prior, pre-trial order about evidence on Banks's termination as a government informant. But unlike the Banks evidence, the District Court had no opportunity to revisit its mid-trial ruling on the Dixon evidence at the second trial— because Rowland did not attempt to present it then. And we agree with the Government that Rowland's failure to offer this evidence again at the April trial "is not well suited" to plain-error review because "[i]t can hardly be error, plain or otherwise, for a district court to fail to admit evidence that no one has offered." Gov't Br. 22. We thus cannot reach the merits of this argument on appeal under any standard of review.

III

Rowland next argues that the District Court improperly permitted the Government in his second trial to offer "late-breaking" DNA evidence, Reply Br. 15 (typeface and

7

capitalization altered), in a way that was "incompatible with basic fairness" and violative of Rule 16(a) of the Federal Rules of Criminal Procedure, Rowland Br. 29. Assuming without deciding that the Government violated Rule 16(a), we nonetheless decline to "second guess" the District Court's exercise of discretion, as Rowland has failed to show that the District Court's actions prejudiced him. *United States v. Lopez*, 271 F.3d 472, 483–84 (3d Cir. 2001).

Rowland alleges that he was prejudiced because the timing of the Government's expert disclosures left him with "insufficient time to retain a DNA expert prior to trial, let alone time to consult with that expert and develop meaningful cross-examination or counter expert testimony." Rowland Br. 29. We are unpersuaded. After receiving the DNA report from the Government, Rowland made no effort to retain his own expert to contest the report. Moreover, Rowland "specifically disclaimed the desire for a continuance," which could have permitted him to retain an expert and advance his own theories of the case.[4] App. 383. In light of Rowland's inaction and his pursuit of just one specific, drastic remedy, the District Court did not abuse its discretion in admitting the

---

[4] Several of our sister courts have deemed relevant a defendant's decision to decline or not pursue other remedies provided under Rule 16. *See, e.g.*, *United States v. Lee*, 834 F.3d 145, 160 (2d Cir. 2016); *United States v. Collins*, 799 F.3d 554, 573–74 (6th Cir. 2015); *United States v. De La Rosa*, 196 F.3d 712, 716–17 (7th Cir. 1999).

8

Government's DNA evidence.[5]

IV

Rowland also argues that the District Court violated his rights under the Confrontation Clause of the Sixth Amendment by impermissibly excluding evidence of Banks's prior termination as a government informant. We disagree.

"[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79 (1986) (cleaned up). Yet it does not follow that the Confrontation Clause "prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." *Id.* at 679. Rather, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about . . . interrogation that is repetitive or only marginally relevant." *Id.* We have derived "a two-part test to determine whether a particular limitation on cross-examination violated a defendant's rights under the Confrontation Clause." *United States v. Noel*, 905 F.3d 258, 268 (3d Cir. 2018) (citation omitted).

> First, we determine whether the limitation significantly inhibited the defendant's effective exercise of her right to inquire into the witness's

---

[5] *United States v. Dowling*, 855 F.2d 114, 118 (3d Cir. 1988), *aff'd*, 493 U.S. 342 (1990), is inapt because, unlike in this case, there we concluded that the district court had not abused its discretion in *precluding* the defendant from offering expert testimony provided to the government five days before trial. But we did not hold the inverse—that the district court would have necessarily abused its discretion by *permitting* the defendant to offer the expert testimony. To the contrary, district courts have "broad discretion in fashioning sanctions for violations of Rule 16." *United States v. Bull*, 8 F.4th 762, 768 n.6 (8th Cir. 2021) (citation omitted).

motivation in testifying. Then, if it did, we ask whether the limitation fell within those reasonable limits which a trial court, in due exercise of its discretion, has authority to establish. Whether the trial court abused its discretion . . . depends on whether the jury had *sufficient other information before it, without the excluded evidence, to make a discriminating appraisal of the possible biases and motivation of the witness*, or, conversely, whether without the limitation, a reasonable jury could have reached a *significantly different impression of the witness's credibility*.

*Id.* (emphases added) (cleaned up). Even if the District Court "significantly inhibited" Rowland's effective exercise of his confrontation right, it was well within its discretion to exclude the proffered evidence as needlessly cumulative under Rule 403. *See United States v. Universal Rehab Servs. (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (en banc) ("If judicial self-restraint is ever desirable, it is when a . . . Rule 403 analysis of a trial court is reviewed by an appellate tribunal.") (cleaned up).

The probative value of the proffered evidence about Banks was minimal. It depended heavily on his knowledge of the reason for his prior termination as a government informant,[6] even though Rowland concedes "the record does not disclose that Banks was informed of why he was terminated as a cooperator." Rowland Br. 42. And we are not persuaded by Rowland's mere speculation that Banks must have "at least suspected that his termination related to his efforts to hide information." *Id.* Meanwhile, Rowland had ample, more compelling evidence available to attack Banks's credibility, including his "extensive criminal history" and his clear motivation to "slant his testimony" based on his cooperation agreement. App. 101.

---

[6] *See* App. 76 (Defense counsel: "[H]e knows what he didn't do, the last go around, and that disqualified him as a cooperator.").

For these reasons, the District Court did not err when it precluded Rowland from presenting evidence that Banks had previously been terminated as a government informant.

V

Rowland's final argument is that the District Court erred in preventing him from pursuing suppression motions he had previously filed and then withdrawn. He is incorrect.

When defense counsel advised the District Court that Rowland sought to withdraw the motions, counsel explained that this decision was based on strategic considerations and expressly disclaimed the ability to raise the motions again. Counsel also represented that Rowland had been actively involved in this decision, and Rowland voiced no disagreement as counsel withdrew the motions. We disagree with Rowland's contention that there were "ambiguities" in either the hearing or the District Court's order denying the motion as moot. Rowland Br. 51. This is textbook waiver, the "intentional relinquishment or abandonment of a known right." *United States v. James*, 955 F.3d 336, 344 (3d Cir. 2020) (citation omitted). And we find no merit to Rowland's suggestion that the absence of a colloquy from the District Court precludes waiver.

VI

Rowland was convicted by a jury after a fair trial. Because none of his claims of error is persuasive, we will affirm the judgment of conviction.