**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael Rudy THAM, Defendant–Appellant.**

**No. 90–10573.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 17, 1991.

Decided Nov. 5, 1991.

Doron Weinberg, Larson & Weinberg, San Francisco, Cal., for defendant-appellant.

Sara M. Lord, U.S. Dept. of Justice, Criminal Division, Washington, D.C., for plaintiff-appellee.

Before CHOY, and SNEED, Circuit Judges, and KELLEHER, Senior District Judge.[*]

CHOY, Circuit Judge:

A federal jury convicted Michael R. Tham for attempting to corruptly influence United States District Judge Stanley A. Weigel. Also convicted were Tham's co-conspirators: ex-crime figure Abraham Chalupowitz, alias "Trigger Abe" Chapman, and United States District Judge Robert P. Aguilar. Tham was found guilty under 18 U.S.C. § 1503 for the substantive offense of endeavoring to influence the due administration of justice, and under 18 U.S.C. § 371 for both conspiracy to defraud the United States and conspiracy to influence the due administration of justice.

Tham appeals his criminal conviction and sentence, alleging that the district court erred when it (1) denied his motion for a

preliminary evidentiary hearing under *Franks v. Delaware;* (2) admitted into evidence incriminating telephone conversations which were intercepted without probable cause and which were the fruit of a prior illegal wiretap; (3) denied Tham's motion for a continuance of his trial date; (4) excluded certain testimonial and documentary evidence which would have helped to exculpate Tham; (5) issued jury instructions which failed to enumerate all the elements of conspiracy and which incorrectly defined the requirement of proving guilt beyond a "reasonable doubt"; and (6) incorrectly classified Tham's criminal convictions under 18 U.S.C. § 371 as two separate "pseudo-counts" of conspiracy under the United States Sentencing Guidelines.

We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Since 1949, Tham had served as a union official in San Francisco for Local 856, an affiliate of the International Brotherhood of Teamsters. Tham was an active and well-known participant in numerous Teamster affairs and organizations. On the basis of the cooperation and testimony of former organized crime figure Aladena T. "Jimmy" Fratianno, former acting boss of the Los Angeles mafia, the FBI investigated Tham's activities. On May 21, 1980, a federal jury convicted Tham under 29 U.S.C. § 501(c) for embezzling union funds and making a false entry into union records. Judge Weigel fined Tham $50,000 and sentenced him to serve consecutive terms of six months in prison and four years on probation.

In July 1987, seeking to vacate his conviction and recover over $200,000 in back-pay and attorney's fees, Tham filed a motion for habeas corpus under 28 U.S.C. § 2255 before Judge Weigel. In an effort to gather information about Judge Weigel's handling of the case and to gain favorable treatment from Judge Weigel, Tham called upon Abe Chapman and Edward Solomon to solicit the help, advice, and person-

* The Honorable Robert J. Kelleher, Senior United States District Judge, sitting by designation.

al influence of Judge Aguilar. Abe Chapman, was distantly related to Judge Aguilar by marriage. Attorney Edward Solomon was a friend and former law-school classmate of Judge Aguilar. In return, for Judge Aguilar's assistance, Tham used his union connections to find a job for Lou Aguilar, the judge's brother.

Tham, Chapman, and Aguilar were indicted on June 13, 1989. The first trial began on February 5, 1990 and ended in a mistrial on March 19, 1990 with the jury deadlocked on counts against Tham and Aguilar. A retrial was scheduled for June 4, 1990. On April 16, 1990, Tham filed a pretrial motion to sever his case from that of his co-defendants. The Government joined in Tham's motion on May 1, 1990. The court granted the severance motion but denied Tham's motion to continue his trial date until after the trials of his co-defendants.

Tham was tried for the second time and, on June 20, 1990, found guilty. On June 26, 1990 Tham moved for a new trial, which the court denied on August 31, 1990. On November 14, 1990, Judge Bechtle entered a judgment of conviction, fined Tham $20,-000, and sentenced him to eighteen months in prison to be followed by three years on probation.

## ANALYSIS

### I. *Franks* Hearing for Defective Wiretap Affidavit

To prove the existence of the conspiracy and to establish that there had been attempts to corruptly influence Judge Weigel, the Government sought to present pen register and wiretap evidence that documented the conspirators' patterns of communication and revealed the contents of their telephone conversations.

Before trial, Tham moved to suppress evidence obtained from three wiretap authorizations of April 22, 1987, September 11, 1987, and October 21, 1987. After a non-evidentiary hearing on February 2, 1990, the district court ruled on February 5, 1990 to suppress evidence from the April wiretap while admitting evidence from the September and October wiretaps.[1] Although Tham argued that the September and October wiretaps were the tainted fruits of the illegal April wiretap, the court ruled that the September and October wiretaps were supported by sufficient independent source evidence of probable cause and necessity.

Tham alleges that it was error to authorize the April and September wiretaps. In support of the wiretap applications, the Government submitted the April 20, 1987 and September 20, 1987 affidavits of FBI special agent Thomas Carlon. First, Tham argues that each affidavit, on its face, failed to establish probable cause for a wiretap under 18 U.S.C. § 2518(3). Second, Tham argues that each affidavit was defective under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and that the district court erred by not granting him a full *Franks* evidentiary hearing.

■ Applying practical common sense and examining the totality of the circumstances as the Supreme Court did in *Illinois v. Gates*, 462 U.S. 213, 230, 238, 103 S.Ct. 2317, 2328, 2332, 76 L.Ed.2d 527 (1983), we find that there was a substantial basis for concluding that probable cause for the wiretaps existed. *United States v. Dozier*, 844 F.2d 701, 706 (9th Cir.), *cert. denied*, 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988).

The April affidavit provided probable cause to believe that Tham was conspiring with others to procure bribes and kickbacks in return for Union approval of certain employee health benefit contracts. Also named in the affidavits were Angelo T. Commito, then President of Labor Health

---

**1.** Chief Judge Peckham, sitting as a magistrate, initially authorized the April 22, 1987 wiretap application against Angelo Commito. During Commito's trial, Judge Patel suppressed the wiretap and its fruits because the accompanying affidavit did not establish necessity under 18 U.S.C. §§ 2518(1)(c) & (3)(c). In suppressing evidence against Tham from the very same April wiretap, Judge Bechtle understandably relied on Judge Patel's ruling. However, we subsequently reversed Judge Patel's ruling in *United States v. Commito*, 918 F.2d 95 (9th Cir.1990).

and Benefit Plan, Inc., real estate developer William Richard Baldwin, labor consultant Martin Bacow, Abe Chapman, Theresa Gene Vaughn, then President of American Digitron, Inc., and Bart J. Burg executive vice-president of American Digitron. The September affidavit contained evidence sufficient to furnish probable cause to believe that Tham was planning to participate in and profit from a fraudulent public offering involving Best Refrigerated Express and a kickback scheme involving the sale of wooden pallets. Both affidavits alleged facts sufficient to establish necessity.

■] Under *Franks v. Delaware,* 438 U.S. at 156, 98 S.Ct. at 2676, and *United States v. Ippolito,* 774 F.2d 1482, 1485 (9th Cir.1985), evidence seized pursuant to a search warrant or wiretap must be suppressed if the defendant can prove by a preponderance of the evidence that: (1) in the affidavit in support of the search warrant or wiretap, *the affiant included a statement which he knew was false or whose veracity he recklessly disregarded,* and (2) the *false statement* was necessary to the magistrate's finding of probable cause. We have since extended *Franks* to include deliberate or reckless *omissions. United States v. Stanert,* 762 F.2d 775, 781, *amended,* 769 F.2d 1410 (9th Cir.1985).

■ The ultimate question of whether a false statement or omission is necessary to a finding of probable cause, is a mixed question of law and fact which we review *de novo.* We review the district court's underlying factual determinations for clear error. *United States v. Ippolito,* 774 F.2d 1482, 1484 (9th Cir.1985).

■ In addition to arguing below that the April affidavit failed to establish probable cause and necessity, Tham also argued that two omissions rendered the April affidavit defective and necessitated a full *Franks* evidentiary hearing. First, the affidavit failed to mention a March 12, 1987 telephone conversation between Angelo Commito and Martin Bacow during which Commito stated that he didn't want to talk to Tham or involve him in any further discussions about an eye-care insurance kickback scheme. Second, according to Tham, the affidavit also failed to mention that, as of April 20, Tham and Commito had not spoken to each other for three months.

The first omission did not render the April affidavit defective or entitle Tham to a full *Franks* evidentiary hearing. Tham offered no proof that the omission was intentional or reckless. At worst the omission was negligent. Even if the omission had been intentional or reckless, its inclusion would not have extinguished probable cause.[2]

■] Nor did Tham prove that the second omission arose from intentional or reckless conduct. Even if the second omission was the product of bad faith conduct by law enforcement officials, addition of the omitted material would not have eliminated probable cause. Far from terminating the deal altogether, Commito merely expressed grumbling dissatisfaction on January 26, 1987 with the deal's prospects and on March 12, 1987 with Tham's handling of the deal. However, there was also evidence that Commito was still willing to pursue further negotiations. On February 12, 1987, Commito indicated that if Tham and officers of American Digitron "pursue this properly ... maybe something can happen." Furthermore, Tham continued his efforts to bring the scheme to fruition, making calls to American Digitron, Bacow, Baldwin, and Chapman as late as mid-April 1987. Bacow, in turn, stayed in frequent touch with Commito.

■ Finally, we conclude that the September and October affidavits were not the fruits of an illegal April wiretap. First,

---

**2.** Tham argues that the *Leon* good faith exception does not extend to wiretaps, however, in *United States v. Leon,* 468 U.S. 897, 923, 926, 104 S.Ct. 3405, 3421, 3422, 82 L.Ed.2d 677 (1984), the Supreme Court indicated that the good faith exception is an integral part of a *Franks* analysis in that only reckless or deliberate police conduct triggers suppression. In *Ippolito,* we extended *Franks* to include affidavits accompanying wiretap applications. *See United States v. Malekzadeh,* 855 F.2d 1492, 1497 (11th Cir. 1988), *cert. denied,* 489 U.S. 1029, 109 S.Ct. 1163, 103 L.Ed.2d 221 (1989) (applying good faith exception to wiretap affidavit).

because the April wiretap was properly authorized, and second, because the September and October affidavits were based on evidence derived from sources independent of the April wiretap. Even if the September and October wiretaps were tainted fruits of the illegal April wiretap, use of the information would have been permissible under the *Leon* good faith exception to the fourth amendment exclusionary rule.

## II. Motion to Continue Trial Date

■ We review a district court's denial of a motion for continuance for an abuse of discretion. We do not find an abuse of discretion unless we conclude that the denial was arbitrary and unreasonable in light of four relevant factors: (1) the extent of the defendant's diligence in readying the defense; (2) the likelihood that the continuance would have satisfied the defendant's need; (3) the inconvenience to the court, opposing party, and witnesses; and (4) the extent to which the defendant may have been harmed. To demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense. *United States v. Shirley*, 884 F.2d 1130, 1134 (9th Cir.1989).

■ Tham argues that his co-defendants Aguilar and Chapman would have been willing to proffer exculpatory testimony at his trial, upon the condition that their trials precede Tham's. To this end he submitted the affidavits of his attorney and of counsel for his co-defendants. The Government argues that the likelihood that Tham's co-defendants would furnish exculpatory testimony was "speculative and contingent." We disagree. This eventuality need not be a certainty. *Byrd v. Wainwright*, 428 F.2d 1017, 1021–22 (5th Cir.1970) (citing *United States v. Echeles*, 352 F.2d 892, 898 (7th Cir.1965)). Nor is defense counsel required to furnish an affidavit or give formal testimony under oath attesting to his intent to use the co-defendants' testimony. *Id.* at 1020.

■ As for denial of the continuance, on the one hand, a trial court is not obligated to accommodate a defendant's strategic aspirations. On the other hand, by denying

Tham's continuance, the district court may have granted severance in form alone, only to take it away in substance. *See United States v. Gay*, 567 F.2d 916, 918–20 & n. 6, 921 (9th Cir.), *cert. denied*, 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978) (wherein court denied motion for severance conditioned upon promise of exculpatory testimony by co-defendants). In *Gay*, 567 F.2d at 921 & n. 8, we suggested in *dictum* that it would have been an abuse of discretion for the district court to first grant severance expressly to enable a codefendant witness to offer exculpatory testimony and then to deny the continuance which would have deterred the witness from invoking the fifth amendment.

Here, however, the district court was well within its discretion, in the regular management of its calendar, to schedule Tham's trial first, leaving Aguilar and Chapman free to either waive or invoke the fifth amendment privilege against self-incrimination. *Id.* at 920. This is because Tham has failed to prove that the district court's primary purpose for granting severance was to facilitate the anticipated testimony of a co-defendant, rather than, for example, to avert prejudice due to conflicting trial strategies (i.e., a decision to plead guilty) or due to the fact that incriminating evidence was admissible against one co-defendant, but not against others. *United States v. Kaplan*, 554 F.2d 958, 966–67 (9th Cir.), *cert. denied*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977). Moreover, in this instance, Tham could have availed himself of transcripts of Judge Aguilar's testimony from the first trial. Chapman's testimony would merely have been cumulative of Judge Aguilar's testimony. In addition, Aguilar's counsel suffered an unanticipated disabling injury and received a ninety-day continuance of his client's trial. Under the circumstances, the district court did not abuse its discretion in concluding that a further continuance of Tham's trial would cause undue delay.

## III. Exclusion of Evidence

A trial court's decision to admit or exclude evidence is subject to review for an

abuse of discretion. *Shirley*, 884 F.2d at 1132. At both trials, the court refused to admit into evidence tape J–1867 involving a December 20, 1987 conversation between Tham and his attorney Linda Offner. On both occasions, the court ruled tape J–1867 inadmissible because it was hearsay and concerned irrelevant matters. Though non-hearsay if offered to prove Tham's state of mind, we agree that tape J–1867 was properly excluded as irrelevant.

During Tham's first trial, the district court admitted into evidence one portion of tape K–736 (a conversation between Tham and his attorney Edward Solomon), which the prosecution used to incriminate Tham. Tham, relying on the rule of completeness embodied by Federal Rule of Evidence 106, sought to play the entire tape and admit the entire transcript of the tape over the Government's hearsay and relevancy objections. Judge Bechtle ruled that, during the prosecution's case-in-chief, Tham could not play the entire tape but could use the entire transcript for impeachment purposes. The court also ruled that Tham could play the balance of the tape while presenting his own case.

■■■ At the second trial, Judge Bechtle ruled that the balance of the conversation on tape K–736 was inadmissible, either in transcript or tape form. This time, the court ruled that the tape was hearsay and irrelevant. Tham argues that the court was bound by the law of the case to admit the balance of tape K–736 pursuant to its ruling during the first trial. *See generally Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir.1990). We agree that under the law of the case doctrine as applied by this circuit it is error for a court upon retrial to reverse an identical evidentiary ruling made during the first trial, barring clear error or a change in circumstances. *United States v. Estrada–Lucas*, 651 F.2d 1261, 1263–65 (9th Cir. 1980).[3]

■■■ Here, although there was no change in trial circumstances, the trial court committed clear error in the first trial when it ruled to admit the irrelevant evidence. In addition, the tape was merely cumulative of other testimony presented as to Tham's state of mind, namely his earnest belief in the merits of his § 2255 habeas corpus petition, which point the Government conceded. It was therefore harmless error for the court to so reverse itself without explanation.

During the first trial Judge Weigel testified that in many cases it would be proper for a judge to advise a lawyer on procedural matters concerning a case not pending before that judge. The Government made no objection. Several questions later the Government made a belated hearsay objection which the court overruled. Later still Judge Weigel testified that FBI agents asked him to secretly record his next conversation with Judge Aguilar. Once again,

---

**3.** We reject the holding of *United States v. Akers,* 702 F.2d 1145, 1147–49 (D.C.Cir.1983), wherein the court held that a retrial renders the first trial a nullity along with any evidentiary rulings therein. In the first place, *Akers* provides no rationale for ignoring a previous evidentiary ruling rendered in the same case, absent clear error or altered circumstances. Thus, despite the dictates of the law of the case doctrine with its implications for deference, consistency, and judicial economy, *Akers* would permit a judge arbitrarily to reverse his own ruling or that of another trial judge in the same case.

Second, *Akers* relies upon legal precedents which do not support its position. The cases cited by the court merely provide that at retrial, counsel is free to make new motions, raise new objections, and present additional evidence, as if no previous trial had occurred. *Id.* at 1148. These pronouncements are irrelevant to the question of whether a trial court, faced with identical objections to the same piece of evidence, must adhere to a previous ruling in the "same case," albeit a ruling from a mistrial.

Furthermore, by analogy, prior case law favors the Ninth Circuit's position. *White v. Muriha,* 377 F.2d 428, 431–32 (5th Cir.), *aff'd on rehearing,* 381 F.2d 34 (1967); *Lincoln Nat'l Life Ins. Co. v. Roosth,* 306 F.2d 110, 112–13, 114 (5th Cir.1962), *cert. denied,* 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963) (on second appeal from retrial, when presented with same issue and body of evidence, law of the case requires adherence to decision of panel on first appeal); *Chicago St. Paul, Minneapolis & Omaha Ry. v. Kulp,* 102 F.2d 352, 353–55 (8th Cir.), *cert. denied,* 307 U.S. 636, 59 S.Ct. 1032, 83 L.Ed. 1518 (1939) (introduction of new evidence at retrial, if merely cumulative, will not bar application of law of the case on second appeal). *See* F. James & G. Hazard, *Civil Procedure,* § 11.5 (3d ed. 1985) ("Thus, a trial court will treat its own earlier rulings as conclusive in subsequent trial proceedings.").

the Government made no objection to the substance of the testimony.[4]

On retrial, the Government raised a timely objection to the question posed by Tham's counsel: whether there is "anything illegal about one judge giving legal advise [sic] to a claimant in a matter pending before another judge?" Thus, law of the case doctrine did not apply and there was no abuse of discretion. Although neither the court nor counsel provided a ground for the objection, the question calls for a legal conclusion material to the case and based on disputed facts.

■■■ As for the question of whether FBI agents asked Judge Weigel to record his next conversation with Judge Aguilar, the district court committed clear error in the first trial when it admitted the latter portions of Judge Weigel's hearsay testimony, which was properly excluded in the second trial. It was harmless error for the district court to fail to specify its reason for altering its ruling. The request of the FBI agents did not demonstrate bias or prejudice, but indicated a legitimate course of investigation. Cf. United States v. Puchi, 441 F.2d 697, 702 (9th Cir.), cert. denied, 404 U.S. 853, 92 S.Ct. 92, 30 L.Ed.2d 92 (1971) (Government agent allegedly asked witness to lie about appellant's guilt). Thus, the FBI request was offered for the truth of the matter therein asserted.

### IV. Jury Instructions on Conspiracy and Reasonable Doubt

Tham argues that the jury instructions failed to specify the degree of criminal intent necessary to convict Tham for the underlying offense of endeavoring to obstruct justice. We review de novo the legal question of whether a jury instruction misstates an element of a statutory crime. United States v. Spillone, 879 F.2d 514, 525 (9th Cir.1989), cert. denied, —— U.S. ——, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990).

We find the jury instructions on conspiracy adequate as to all elements, including the specific intent for obstruction of justice. See United States v. Tuohey, 867 F.2d 534, 536–38 (9th Cir.1989); United States v. Andreen, 628 F.2d 1236, 1248 (9th Cir.1980). Tham's counsel concedes that a specific intent instruction was given.

■■■ Tham argues that the jury instructions incorrectly defined the concept of "reasonable doubt." Jury instructions need not be perfect to withstand challenge on appeal. The proper inquiry is whether, considering the charge as a whole, the trial court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading. Frank Briscoe Co. v. Clark County, 857 F.2d 606, 612 (9th Cir.1988), cert. denied, 490 U.S. 1048, 109 S.Ct. 1957, 104 L.Ed.2d 426 (1989) (quoting Coursen v. A.H. Robbins Co., 764 F.2d 1329, 1337, modified, 773 F.2d 1049 (9th Cir.1985)). We find that the jury instructions adequately defined the concept of "reasonable doubt." Brief for the United States of America at 48.

■■■ Tham also claims that he was prejudiced by the court's failure to provide either counsel with a written copy of the jury instructions before they were read to the jury. This was because the court had not prepared them until the time for delivery of closing arguments. Even if the court's action constituted a violation of Federal Rule of Criminal Procedure 30, we find no prejudice to Tham because neither party was "unfairly prevented from arguing its defense to the jury or substantially misled in formulating and presenting arguments." United States v. Gaskin, 849 F.2d 454, 458 (9th Cir.1988).

Although both parties may have been disadvantaged, counsel for both sides knew that conspiracy and reasonable doubt were to be among the concepts at issue. Moreover counsel had two opportunities to hear and raise objections to the content of the

---

4. The Government attorney merely objected to the characterization by Tham's counsel that the FBI agents had asked Judge Weigel to "wear a harness to try to entrap Judge Aguilar." (emphasis added). When the court sustained the Government's objection Tham's attorney re-

phrased his question and asked instead: "Did they want you to wear a harness or a recorder when you talked to Judge Aguilar?" To which Judge Weigel responded: "That's correct, they did."

jury instructions—both during the initial reading of the court's instructions and later when, in response to the jury's questions, the court repeated its instructions on "conspiracy" and "reasonable doubt."

## V. Sentencing for Conspiracies with Separate Objectives

The Government indicated Tham under 18 U.S.C. § 371 for two separate conspiracies with two separate objectives—first, a conspiracy to commit an offense against the United States, and second, a conspiracy to defraud the United States.[5] The Government also indicted Tham for "corruptly endeavoring to influence, obstruct, and impede the due administration of justice" in the federal court for the Northern District of California by using Judge Aguilar's access to and influence with Judge Weigel to obtain an evidentiary hearing for Tham in his habeas corpus proceeding before Judge Weigel. This violation of 18 U.S.C. § 1503 was both the conspiratorial objective of and the substantive offense underlying the conspiracy to commit an offense against the United States.[6]

▬▬▬ Tham argues that the district court erred in convicting him for two separate conspiracies because the jury verdict did not specify whether the jury had found Tham guilty on one or both charges of conspiracy. We find no error. We agree with the Government that where a defendant is charged with one conspiracy to commit several separate offenses, he may be convicted on a separate count of conspiracy for each separate object offense. United States Sentencing Commission, *Guidelines Manual*, § 1B1.2(d) (Nov.1990) (hereinafter U.S.S.G.). Furthermore where the jury's verdict fails to specify which of the charged offenses were the objects of the conspiracy, then the defendant may be convicted of those object offenses of which the court, were it sitting as a trier of fact, would convict the defendant. U.S.S.G. § 1B1.2(d), comment. (n.5).

Tham also argues that it was error for the district court to sentence him for the commission of two separate conspiracies when, in fact, he entered into but a single criminal conspiracy with a single conspiratorial objective. Looking to the Government's bill of particulars and the district court's jury instructions, we disagree. First, Tham was charged with conspiring to defraud the United States by three means: (a) obstructing an FBI investigation (Judge Aguilar warned the coconspirators of ongoing FBI visual surveillance and wiretaps); (b) impeding the lawful function of a federal district court (Judge Aguilar warned the coconspirators of the FBI investigation into their activities, intervened on Tham's behalf in probation matters, used his access to and influence with Judge Weigel to get Tham a habeas corpus evidentiary hearing before Judge Weigel, and on the basis of his knowledge of and friendship with Judge Weigel gave the coconspirators information and advice on how to handle the habeas corpus case before Judge Weigel); and (c)

---

5. Title 18, Section 371, of the United States Code provides:

 "§ 371. *Conspiracy to commit offense or to defraud United States.* If two or more persons conspire to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons to any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

 If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor."

6. Title 18, Section 1503, of the United States Code provides:

 "§ 1503. *Influencing or injuring officer or juror generally.* Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

corruptly influencing Judge Aguilar (Judge Aguilar disclosed confidential information concerning the FBI investigation, used information acquired as a judge to thwart the FBI investigation, used his access to and influence with Judge Weigel to advise and assist Tham with his habeas corpus case, and lent the prestige of his office to advance Tham's private interests).

First, the bill of particulars contains numerous redundancies in its recitation of acts in furtherance of conspiracy and unlawful conspiratorial objectives. It appears that there was but one conspiracy to overturn Tham's embezzlement conviction by influencing Judge Aguilar, influencing Judge Weigel, and manipulating the prospects for success in Tham's habeas corpus action.

 Second, under the law of this circuit, a defendant cannot be convicted under section 1503 for impeding the function of the FBI. Obstruction of justice requires acts to thwart some aspect of the Government's judicial function. An investigation conducted by the FBI, the IRS, or some other governmental agency, does not constitute a judicial proceeding. *United States v. Fayer*, 573 F.2d 741, 745 (2d Cir.), *cert. denied*, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978); *United States v. Ryan*, 455 F.2d 728, 733 (9th Cir.1972).

 However, a defendant may be convicted of conspiracy, or agreement to commit an offense, under section 371 whether or not he has actually committed that offense. The conspiracy may have an object offense that is a violation of either criminal or civil law. A conspiracy to defraud the United States need not involve pecuniary loss. *Tuohey*, 867 F.2d at 536–37.

Here, there was a conspiracy to corruptly endeavor to influence Judge Weigel with the ultimate objective of overturning Tham's 1980 embezzlement conviction. Subsequently there was a conspiracy to defraud the United States with the independent objective of thwarting the FBI investi-

gation into the crime of endeavoring to obstruct justice. Under section 371, it is illegal to conspire to defraud the United States and any agency thereof, including the courts, officers of the court, the FBI, and the IRS. *United States v. Rosengarten*, 857 F.2d 76, 78–79 (2d Cir.1988), *cert. denied*, 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989).

The object of the conspiracy need not implicate a separate statutory violation, so long as the conduct impairs a government function. *Id.* at 78. For example, it was a violation of section 371 for an SEC employee to divulge confidential information from which coconspirators could profit. The violation of confidentiality was an act of dishonesty that "impaired the public confidence essential to the effective functioning of government." *United States v. Peltz*, 433 F.2d 48, 51–52 (2d Cir.1970), *cert. denied*, 401 U.S. 955, 91 S.Ct. 974, 28 L.Ed.2d 238 (1971).

Tham's sentence for commission of two separate conspiracies was not error. AFFIRMED.