**UNITED STATES of America, Plaintiff/Appellee,**

v.

**Robert PITNER, Defendant/Appellant.**

**UNITED STATES of America, Plaintiff/Appellee,**

v.

**David M. HANSON, Defendant/Appellant.**

Nos. 90–10299, 90–10318.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 1992.

Decided Nov. 3, 1992.

As Amended on Denial of Rehearing and Rehearing En Banc March 5, 1993.

J. Frank McCabe, Goorjian & McCabe, San Francisco, Cal., for defendant/appellant Pitner.

Juliana Drous, Tamburello, Hanlon & Bresciani, San Francisco, Cal., for defendant/appellant David M. Hanson.

Eric J. Swenson, Asst. U.S. Atty., San Francisco, Cal., for plaintiff/appellee U.S.

Before HALL and WIGGINS, Circuit Judges, and BURNS,* Senior District Judge.

* The Honorable James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation.

JAMES M. BURNS, Senior District Judge:

Pitner and Hanson appeal their convictions and sentences. Both defendants contend the district court erred by failing to instruct the jury properly regarding knowledge and willfulness, *mens rea* elements of the crimes for which they were convicted. Pitner also contends the evidence presented at trial was insufficient to sustain his conviction. The remaining issues appealed by Pitner and Hanson were addressed in a separate, unpublished memorandum; 967 F.2d 595.

We have jurisdiction under 28 U.S.C. § 1291 (1988).

## BACKGROUND

Hanson was the president of LendVest Mortgage, Inc. (LendVest), a company in the business of originating residential mortgage loans. In 1987 LendVest received $200,000 cash from an investor who requested the transaction remain confidential. Hanson was aware banks were required to file currency transaction reports (CTRs) for deposits of $10,000 or more; therefore, the investor's desire for confidentiality would be defeated if Hanson deposited the $200,000 as a lump sum in LendVest's corporate account.

Hanson consulted certain LendVest employees who had banking experience about ways the CTR requirement could be circumvented. As a result of these discussions, Hanson and the LendVest employees involved concluded the CRT requirement could best be avoided by breaking the $200,000 into amounts less than $10,000 and depositing the smaller amounts into various employees' personal bank accounts; the employees could then write checks back to LendVest's general account for the de-

posited amounts, the money could be used by LendVest, and the $200,000 deposited would not be reported.

Hanson also discussed structuring the $200,000 transaction with Pitner, a close business associate. Hanson asked Pitner to help by depositing some of the money in each of his three personal accounts and then returning the money to LendVest by check. Pitner agreed. On November 25, 1987, $9,500 was deposited in each of two personal accounts belonging to Pitner, $8,500 was deposited in a third account, and $2,500 was retained in cash. That same day, checks were written on Pitner's accounts returning the $30,000 to Lend-Vest.

In 1988 Hanson, Pitner, and seven others were indicted by a federal grand jury. Pitner was convicted by a jury on one count of willfully structuring transactions with one or more financial institutions in violation of 31 U.S.C. § 5324(3) (1986). Hanson was convicted by a jury on four counts of violating 31 U.S.C. §§ 5322(b) and 5324(3) (1986).

On June 20, 1990, Hanson was sentenced to thirty months imprisonment, a three-year term of supervised release, and a fine of $5,000. On June 27, 1990, an amended judgment was entered sentencing Pitner to three years probation with three months in a halfway house or under electronic home detention to be determined by the probation officer, and a fine of $10,000.[1]

## DISCUSSION

Hanson and Pitner contend they lacked the requisite intent to violate either 31 U.S.C. § 5322(b)[2] or § 5324(3)[3] because neither defendant was aware of any legal duty imposed upon him under these statutes. Hanson and Pitner further contend the district court's jury instructions failed

---

1. Pitner's three-month term of custody has been stayed pending appeal, and Hanson is on release pending appeal.

2. 31 U.S.C. § 5322(b) provides:
 A person willfully violating this subchapter or a regulation prescribed under this subchapter ... as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period, shall be fined not more than $500,000,

imprisoned for not more than 10 years, or both.

3. 31 U.S.C. § 5324(3) provides:
 No person shall for the purpose of evading the reporting requirements of section 5313(a) ... structure or assist in structuring ... any transaction with one or more domestic financial institutions.

to adequately define the degree of criminal intent necessary to convict them.

Pitner also contends the evidence presented at trial was insufficient to sustain his conviction because the government did not establish he had knowledge of the bank's currency reporting requirement or that he intended to evade that requirement.

## JURY INSTRUCTIONS

 This court reviews *de novo* the legal question of whether a jury instruction misstated an element of a statutory crime. *United States v. Tham*, 960 F.2d 1391, 1398 (9th Cir.1992). Jury instructions, however, do not have to be perfect to withstand challenge on appeal. *Id.* at 1399. "The proper inquiry is whether, considering the charge as a whole, the trial court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." *Id.* "Knowledge and belief are ... questions for the factfinder." *Cheek v. United States*, 498 U.S. 192, ——, 111 S.Ct. 604, 611, 112 L.Ed.2d 617 (1991).

 Defendants challenge the district court's refusal to instruct the jury that, to satisfy the element of willfulness under 31 U.S.C. §§ 5322(b) and 5324(3), the government would have to show defendants knew (1) they had a legal duty not to structure currency transactions for the purpose of evading the banks' CTR requirement and (2) intentionally structuring currency transactions carried a criminal penalty.

The district court gave the following jury instructions directly and indirectly relating to intent:

An act is done willfully if done knowingly and deliberately, either to disobey or to disregard the law.

An act is done knowingly if a defendant realizes what she or he is doing and did not act through ignorance, mistake, or accident. You may consider the evidence of the defendant's acts and words, along with all other evidence, in deciding whether the defendant acted knowingly. The term "structuring" a currency transaction means the breaking down of large amounts of United States currency into amounts of $10,000 or less, preliminarily to transacting business with a financial institution in an attempt to evade causing the financial institution to file the otherwise required currency transaction report.

You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

When the court instructed the jury as to the proof necessary to support a conviction for violation of § 5324(3), it included the following:

The essential elements are ...

[T]hat a defendant knowingly and willfully structured or assisted in structuring a currency transaction....

[T]hat the purpose of the structured transaction was to evade the reporting requirements that I heretofore described....

To abide by the court's instructions, a jury would have to initially determine whether defendants were aware of the banks' CTR requirements since a person could not act with the purpose of causing a bank not to file a CTR unless that person knew the bank was required to do same.

 As to defendants' second point, this court has held that knowledge of an act's unlawfulness is unnecessary to establish willful intent under 31 U.S.C. § 5324(3). *United States v. Hoyland*, 914 F.2d 1125, 1129–30 (9th Cir.1990). The person acting only needs to know what he is doing; "[i]t does not mean that, in addition, he must suppose that he is breaking the law." *Id.* at 1129 (quoting *American Surety Co. v. Sullivan*, 7 F.2d 605, 606 (2d Cir.1925)). In other words, "intent to do the act suffices." *Hoyland*, 914 F.2d at 1130. A person, therefore, only has to intend to structure deposits for the purpose of frustrating the CTR requirement to satisfy the willfulness elements of 31 U.S.C. §§ 5322(b) and 5324(3). *Id.* at 1128–29. *See also United States v. Scanio*, 900 F.2d 485, 491 (2d Cir.1990). After reviewing the record and looking at the jury instructions as a whole,

we find the district court's instructions to the jury met the standards set forth in *Hoyland.*

Both Hanson and Pitner also move this panel to reconsider and to overrule *Hoyland,* especially in light of the recent United States Supreme Court decision in *Cheek v. United States.* We, however, have neither the inclination nor the authority to reconsider *Hoyland. See* Fed.R.App.P. 35. *See also United States v. Aguilar,* 883 F.2d 662, 690 n. 25 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 751, 112 L.Ed.2d 771 (1991). Even though it is a moot point, we are not persuaded *Cheek* would alter the shape of *Hoyland* if it were reconsidered.

Hanson and Pitner further contend in their reply briefs (as a slight variation on their theme) that the district court's alleged errors in its instructions to the jury are apparent when compared to the definition of willfulness as set forth by the Supreme Court in *Cheek.*

In *Cheek,* the Supreme Court reiterated "[t]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution...." *Cheek,* 498 U.S. at ——, 111 S.Ct. at 609. The Court pointed out, however, the proliferation of statutes and regulations sometimes makes it difficult for citizens to understand their obligations under tax laws. *Id.* Because of these understandable difficulties, "the Court almost 60 years ago interpreted the statutory term 'willfully' as used in the federal criminal tax statutes as carving out an exception to the traditional rule. This special treatment of criminal tax offenses is largely due to the complexity of the tax laws." *Id.* As a result, the Court established the standard for the statutory willfulness requirement in tax cases as the "voluntary, intentional violation of a known legal duty." *Cheek,* 498 U.S. at ——, 111 S.Ct. at 610. *See also United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976); *United States v. Pallan,* 571 F.2d 497, 501 (9th Cir.), *cert.*

*denied,* 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411 (1978).

Although the defendant in *Cheek* was charged with failing to file tax returns and tax evasion, Hanson and Pitner assert the element of willfulness in this case should be interpreted similarly because tax evasion and the structuring of currency transactions are both statutorily-created offenses and the governing law is regulatory in nature.[4] Operating on this premise, Hanson and Pitner contend the government was required to show that each of them voluntarily and intentionally violated a known legal duty in order to prove the required element of willfulness. *Cheek,* 498 U.S. at ——, 111 S.Ct. at 610. *See also United States v. Powell,* 955 F.2d 1206, 1210–11 (9th Cir.1992).

We reject defendants' contentions that violation of tax laws and currency reporting requirements should be treated similarly. *Accord United States v. Aversa,* Nos. 91–1363, 91–1364, and 91–1574, 1993 WL 4843, at 6–8 (1st Cir. Jan. 13, 1993) (en banc). *United States v. Dashney,* 937 F.2d 532, 539–40 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991). *See also Domanus v. United States,* 961 F.2d 1323, 1325 (7th Cir.1992) (the court refused to apply the *Cheek* definition of willfulness to a civil action brought under 26 U.S.C. § 6672 against company officials responsible for delinquent trust fund taxes and noted that the *Cheek* standard is limited to criminal tax prosecutions). The Supreme Court in *Cheek* noted the purpose of applying a special standard for willfulness in tax cases was to prevent innocent people from being prosecuted for doing something they didn't realize was prohibited. *Cheek,* 498 U.S. at ——, 111 S.Ct. at 609. In contrast, "structuring is not the kind of activity that an ordinary person would engage in innocently. Only the person who has a deliberate

---

**4.** Defendants fail to note, however, the core issue in *Cheek* was whether a defendant who, in good faith, believed certain wages were not income for the purposes of tax laws willfully violated the law by not reporting those wages. *Cheek,* 498 U.S. at ——, 111 S.Ct. at 607–09. Neither Hanson nor Pitner presented a good faith defense.

intention to frustrate the reporting by the banks is guilty of the offense." [5] *Hoyland,* 914 F.2d at 1129. The laws governing currency reporting are straightforward and easily understood in contrast to the complex and sometimes convoluted tax laws. *See Dashney,* 937 F.2d at 540.[6] Unlike Cheek, defendants understood there was a regulation requiring banks to report transactions greater than $10,000. Defendants' confusion lay in their belief that the law would tolerate a scheme to circumvent that regulatory mechanism.

Based on the foregoing, we find the district court's instructions to the jury were proper.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT PITNER'S CONVICTION

■ Pitner contends the district court erred when it denied his motions for judgment of acquittal or, in the alternative, for a new trial made at the close of the government's case-in-chief. Pitner argues the evidence was insufficient to sustain his conviction because no competent evidence was introduced by the government to establish he knew a CTR requirement existed or that he intended to frustrate that requirement. *See* Fed.R.Crim.P. 29. We disagree.

■ Sufficient evidence to support a conviction exists if any rational trier of fact, after viewing the evidence in the light most favorable to the government, could conclude the evidence was adequate to prove defendant guilty of each element of the crime beyond a reasonable doubt. *United States v. Barbosa,* 906 F.2d 1366, 1368 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 394, 112 L.Ed.2d 403 (1990). *See also United States v. Hernandez,* 876 F.2d 774, 777 (9th Cir.), *cert. denied,* 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). Cir-

cumstantial evidence and inferences drawn from same may be sufficient to sustain a conviction. *United States v. Lewis,* 787 F.2d 1318, 1323 (9th Cir.1986) (history omitted). Because Pitner did not offer evidence in his own behalf, we are required to review his motion for judgment of acquittal made at the close of the government's case-in-chief on the basis of the government's evidence alone. *United States v. Polizzi,* 500 F.2d 856, 903 (9th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975).

■ The standard of review for denial of a motion for new trial is whether the court abused its discretion. *United States v. Hsieh Hui Mei Chen,* 754 F.2d 817, 821 (9th Cir.), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985). A motion for new trial should be granted only in "exceptional circumstances in which the evidence weighs heavily against the verdict." *Id.*

At trial the government produced records showing on November 25, 1987, $9,500 was deposited in each of two personal accounts belonging to Pitner, $8,500 was deposited in a third account, and $2,500 was retained in cash. That same day, checks were written on Pitner's accounts returning the $30,000 to LendVest. The government called Martina Hartung, a LendVest employee, who testified that Pitner and Hanson were long-time business associates. The government also called Lavonne Brunner, a LendVest employee and former bank manager, who testified that Hanson stated, during a discussion of how to handle the $200,000, that Pitner would take some of the money. The government also called Andrea Langley, LendVest's comptroller and a previous bank employee, who testified that Hanson told her that Pitner might deposit some of the money in

---

**5.** In fact, the redundant language in §§ 5322(b) and 5324(3) requiring willful and deliberate conduct serves to ensure the protection of innocent citizens who are unaware of the CTR requirement for financial institutions and who structure their deposits for one reason or another in such a way that the reporting requirement is inadvertently frustrated.

**6.** The Tenth Circuit opinion includes an informative discussion of the legislative history underlying 31 U.S.C. § 5324 of the Money Laundering Control Act of 1986, *Dashney,* 937 F.2d at 537–38, which we decline to repeat.

his personal accounts. The government also established that Pitner was an experienced, sophisticated businessman. On the basis of the evidence presented by the government, we find the district court did not err when it denied Pitner's initial motion for judgment of acquittal.

Pitner also argues the district court erred when it denied his motion for judgment of acquittal or, in the alternative, for a new trial made at the close of all the evidence. Again, we disagree. In addition to the evidence discussed above, the jury also had Hanson's testimony to consider. During cross-examination, Hanson testified he discussed with Pitner the plan for depositing the $200,000 in amounts of less than $20,000 in various personal accounts. Hanson further testified he asked for Pitner's help, and Pitner agreed. Considering the testimony before the jury at the close of evidence, we find the district court did not err when it denied Pitner's second motion for judgment of acquittal.

After reviewing the record, we find the government presented sufficient evidence through oral testimony [7] and bank records for a rational juror to infer Pitner had specific intent to evade the bank's CTR requirements. *See United States v. Olson*, 925 F.2d 1170, 1176 & n. 11 (9th Cir.1991) (circumstantial evidence supported by the record is sufficient to show defendant had intent to defraud; jury is entitled to give circumstantial evidence as much weight as direct evidence). As the Supreme Court sagaciously observed, "[t]here is no surer way to find out what parties meant, than to see what they have done." *Brooklyn Ins. Co. v. Dutcher*, 95 U.S. 269, 273, 24 L.Ed. 410 (1877). We find, therefore, the district court did not abuse its discretion when it denied Pitner's motion for new trial.

### CONCLUSION

Based on the foregoing, we hold the district court properly instructed the jury as to the willfulness requirements of 31 U.S.C. §§ 5322(b) and 5324(3). We further hold there was sufficient evidence presented to support defendants' convictions and the district court did not err when it denied

7. Questions regarding credibility of witnesses are for the jury and are generally immune from consideration by the appellate court. *United*

Pitner's motions for judgment of acquittal or, in the alternative, for a new trial.

AFFIRMED.

*States v. Gordon,* 844 F.2d 1397, 1405 (9th Cir. 1988).