2 F.3d 1158
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Agustin AQUINO-ESTRADA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Taurino OJEDA-JIMENEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Miguel COLMENERO-PEREZ, Defendant-Appellant.
 Nos. 91-50431, 91-50435, 91-50443.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1993.
Decided July 7, 1993.
As Amended on Denial of Rehearing Nov. 2, 1993.
 
 Before FLETCHER, POOLE and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants Agustin Aquino-Estrada (Aquino), Taurino Ojeda-Jimenez (Ojeda) and Miguel Colmenero-Perez (Colmenero), and two other individuals, Jose Zazueta-Felix (Zazueta) and Hugo Landaverde (Landaverde) were arrested by DEA Agents on February 8, 1991, following an attempted sale of 10 kilograms of cocaine to DEA informants. In January 1991, Ojeda and Landaverde had attended a meeting with a DEA informant in which they discussed the possibility of finding someone to provide the informant with drugs. Sometime thereafter, Zazueta's cousin agreed to sell cocaine to the informant, which Zazueta was to deliver to Oxnard, California. On February 8, 1991, Zazueta, Colmenero and Aquino drove to a Chevron station in Ventura with 10 kilograms of cocaine, where they met Landaverde and Ojeda. Colmenero and Aquino then took Zazueta to the Victoria Motel, where they left him with the cocaine, and returned to the Chevron station. Ojeda telephoned the informants, who were posing as buyers, to notify them that they had arrived. One informant met the four men at the gas station, and was accompanied by Aquino back to the motel, where Zazueta showed him the cocaine. When Aquino and the informant returned to the Chevron station, Colmenero went to the motel, picked up Zazueta, and all the men proceeded to the Hilton Hotel where the transaction was to be completed. There they were met by the second informant. While Aquino, Landaverde and Ojeda waited inside the Hotel, Zazueta, Colmenero and the two informants went out to Zazueta's car. After Zazueta directed Colmenero to open the car so that he could "deliver", the informant playing the role of the money carrier began to walk away and Zazueta directed Colmenero to follow him. At that point, all five men were arrested.
 
 
 3
 On April 23, 1991, Zazueta pleaded guilty to conspiracy, possession of a controlled substance with intent to distribute, and using a firearm during a drug trafficking crime, and testified at the trial which commenced on April 22, 1991. The remaining defendants were tried by a jury, which convicted Aquino, Colmenero, and Ojeda of conspiracy and of possession with intent to distribute cocaine in violation of 21 U.S.C. Secs. 846 & 841(a)(1). The jury being unable to reach a verdict as to Landaverde, the court declared a mistrial on May 3, 1991. Each appellant was sentenced to 120 months in custody of the Bureau of Prisons, five years supervised release, and a $50 special assessment on each count. Appellants appeal their convictions, arguing that the evidence was insufficient to sustain their convictions. Colmenero also appeals the denial of his motion for a new trial, and argues that his conviction was tainted by two jurors' observation of the crime scene, requiring reversal. We affirm.
 
 I. Sufficiency of the Evidence
 
 4
 While the appellants here, and during the trial, have advanced "hypothetically plausible explanations of the appellants' behavior that are consistent with innocence, that is not the appropriate standard." United States v. Mares, 940 F.2d 455, 460 (9th Cir.1991). Instead, when presented with a challenge to a conviction alleging insufficiency of the evidence, we "search the record to determine 'whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged.' " Id. at 458 (quoting United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir.1986)). The jury is assumed to have "resolved all ... matters in a manner which supports the verdict." United States v. Garza 980 F.2d 546, 552 (9th Cir.1992) (citation omitted).
 
 A. Conspiracy
 
 5
 All three appellants in this case concede that sufficient evidence was produced to establish the existence of a conspiracy, but contest the sufficiency of the evidence to support their connection to the conspiracy. Aquino's Opening Brief at 30; Ojeda's Opening Brief at 12; Colmenero's Opening Brief at 15. Once the existence of a conspiracy is established,
 
 
 6
 evidence of even a slight connection with the conspiracy is sufficient to establish a defendant's knowing participation in a conspiracy. Although a defendant's mere proximity to the scene of a crime is insufficient to establish his knowing participation in a conspiracy, seemingly innocent acts, when viewed in their proper context, may support an inference of guilt.
 
 
 7
 United States v. Buena-Lopez, 987 F.2d 657, 659 (9th Cir.1993) (citations omitted). The issue before us is thus whether the evidence of each appellant's acts, and the circumstances surrounding those acts, is sufficient "to prove beyond a reasonable doubt that he had a slight connection to th[e] conspiracy." United States v. Sitton, 968 F.2d 947, 960 (9th Cir.1992) (citation omitted), cert. denied, 113 S.Ct. 1306 (1993).
 
 1. Aquino
 
 8
 Aquino argues that the only evidence which could have linked him to the conspiracy was the testimony of the DEA informant, Lira, that Aquino was in the room when Zazueta showed the cocaine to Lira, and was present when the transaction was discussed. Aquino's Opening Brief at 34. Aquino would have us hold that this evidence was insufficient on the grounds that it was contradicted by Zazueta's testimony, it was not corroborated by contemporaneous reports composed by Lira, and that Lira's credibility and veracity were thoroughly impeached during cross-examination. Aquino's Opening Brief at 34-35.
 
 
 9
 Even discounting Lira's testimony that Aquino was present when the cocaine was shown or discussed, we believe there is an adequate basis to support the jury's finding. Aquino accompanied Zazueta in the car while he was transporting the 10 kilograms of cocaine. At Zazueta's bidding he left Zazueta at a motel and proceeded to the Chevron station where he went to the buyer's car, got in, accompanied him to Zazueta's motel room, stayed in the room for a few minutes while Zazueta showed the buyer the cocaine, and then accompanied the buyer back to the Chevron station. Aquino then accompanied the buyer to the Hilton Hotel--the site of the final transaction. We believe that these facts are not "perfectly consistent with th[ose] of an innocent person," United States v. Penagos, 823 F.2d 346, 349 (9th Cir.1987), and thus would allow a rational jury to conclude beyond a reasonable doubt that Aquino was playing a crucial role in the sale of the cocaine.
 
 2. Colmenero
 
 10
 Colmenero's argument is based on the credibility of Zazueta's testimony to the effect that Zazueta had misled Colmenero about the purpose of his activities that day in order to persuade Colmenero to accompany him. We are not, however, in a position to weigh Zazueta's credibility on this point--we must leave such questions to the jury. United States v. Gordon, 844 F.2d 1397, 1405 (9th Cir.1988).
 
 
 11
 The facts as established by the prosecution are that Colmenero accompanied Zazueta to the Chevron station, and drove Zazueta to the motel where Zazueta met with the DEA informant. While Zazueta met with the buyer, Colmenero waited with Ojeda at the gas station and then picked Zazueta and the cocaine up from the motel, escorting Zazueta to the Hilton where the drug transaction was to be consummated. At the Hilton, Zazueta directed Colmenero to go open the car so that he could deliver his "errand." Colmenero accompanied Zazueta and the two informants to the car, apparently approached but not opened at that time, and then followed the informant who was posing as the money carrier when he walked away from the car.
 
 
 12
 We find these actions inconsistent with innocence, and believe that a rational jury, taking these facts in the light most favorable to the government, could have found Colmenero to be a participant in the conspiracy.
 
 3. Ojeda
 
 13
 Ojeda attended the meetings between the DEA informant and Landaverde which set up the cocaine transaction. Ojeda drove Landaverde to the Chevron station on the day and at the time the transaction was supposed to take place. At Zazueta's request, Ojeda called the DEA informants to let them know that they had arrived at the Chevron station. On the phone with the buyer, Ojeda emphatically affirmed that they had brought "ten tons." Ojeda waited with Colmenero while Aquino took the buyer to meet with Zazueta, after which he drove in caravan with Zazueta (who was carrying the cocaine) and the DEA informant (the buyer) to the site of the final delivery. In addition, a search of Ojeda's car revealed a pay-owe sheet with Ojeda's fingerprint on it bearing a notation ("23,000 kilometres X 10") which could be taken to refer to this drug transaction ($22,000-$23,000 per kilogram for 10 kilograms). These facts, for the same reasons as discussed above, adequately support the jury's discrediting of the testimony in Ojeda's favor and the conclusion that Ojeda played a role in the conspiracy.
 
 B. Possession
 
 14
 A conviction for possession with intent to distribute narcotics may be supported by one or more of three legal theories: (1) co-conspirator liability; (2) aiding and abetting; and (3) exercising dominion and control over contraband. Mares, 940 F.2d at 460 (quoting United States v. Behenna, 814 F.2d 1318, 1319 (9th Cir.1987)). Appellants argue the insufficiency of the evidence to support the third theory. There is no question, however, that Zazueta did possess cocaine with the intent to distribute it in furtherance of the conspiracy. Because we have found the conspiracy conviction to be supported by the evidence, appellants' possession convictions are supported under the theory of co-conspirator liability. See United States v. Vasquez, 858 F.2d 1387, 1393 (9th Cir.1988), cert. denied, 488 U.S. 1034 (1989).
 
 II. Denial of the Motion for New Trial
 
 15
 Colmenero argues that the district court abused its discretion in denying his motion for a new trial. We review this denial for an abuse of discretion, and we have instructed that a "motion for new trial should be granted only in 'exceptional circumstances in which the evidence weighs heavily against the verdict.' " United States v. Pitner, 979 F.2d 156, 161 (9th Cir.1992) (quoting United States v. Hsieh Hui Mei Chen, 754 F.2d 817, 821 (9th Cir.), cert. denied, 471 U.S. 1139 (1985)).
 
 
 16
 Colmenero's argument is based on several comments made by the district court during the hearing on the motion for a new trial, all of which indicated that the district court might have weighed the evidence differently than the jury in fact did. The court, however, explicitly found that while there was "quite strong testimony" supporting Colmenero's claim that he didn't know what was going on, his "actions were contrary to that assertion." We agree, and hence cannot conclude that the evidence weighs heavily against the jury's assessment of the plausibility of Colmenero's version of the events in question. See Pitner, 979 F.2d at 162. As we have seen in our review of the evidence, the jury determination in this regard was fully supported. We thus find no abuse of discretion in the district court's denial of the motion.
 
 III. Extraneous Information
 
 17
 Colmenero argues for the first time on appeal that he is entitled to a new trial because two of the jurors in this case viewed the Chevron station and the Victoria Motel during their drive to the court. Our inquiry is whether the jurors' access to this extraneous information "so affected the jury's ability to consider the totality of the evidence fairly that it tainted the verdict." United States v. Smith, 962 F.2d 923, 935 (9th Cir.1992). We accord "substantial weight" to the district court's assessment of the effect of extraneous information on the jury. United States v. LaFleur, 971 F.2d 200, 206 (9th Cir.1991), cert. denied, 113 S.Ct. 1292 (1993). The district court inquired whether viewing of the motel and service station entered into the jury's considerations and, in fact, whether the observations had even been discussed with the other jurors, and was satisfied that they had not affected the verdict.
 
 
 18
 We find no "reasonable possibility that the extrinsic material could have affected the verdict." United States v. Steele, 785 F.2d 743, 746 (9th Cir.1986). Appellant's defense did not deny his presence at these locations, nor did it involve contesting the precise nature of his actions at these sites. Instead, his defense rested entirely on his state of mind when he met with the other defendants and with the DEA informants. Appellant has not explained how two jurors' viewing the sites in question could have led the jury to infer that he was aware of the nature of the transaction, and we do not believe that there is a "reasonable possibility" that such an inference would have been drawn.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3